UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ENRIQUE SCOTT,

            Petitioner,

V.

T.R. CRAIG, Warden,
F.C.I. Raybrook,

            Respondent.

**REPORT AND RECOMMENDATION**

05-CV-1359
(LEK/VEB)

---

## I. INTRODUCTION

Petitioner Enrique Scott, acting *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2241. Petitioner is an inmate at the Federal Correctional Institution ("FCI") in Fairton, New Jersey.[1] Petitioner was convicted in the Eastern District of Pennsylvania in 2002 of Interference with Commerce by Robbery and Use of a Gun During the Commission of a Violent Crime. Petitioner does not challenge his conviction. Rather, he contests the disciplinary action determination of the Discipline Hearing Officer ("DHO") at FCI Fort Dix, New Jersey.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 15).

## II. BACKGROUND

---

[1] Petitioner was incarcerated at FCI Ray Brook, which is located in the Northern District of New York, when he filed his petition.

A.     Facts[2]

On April 2, 2003, while an inmate at FCI Fort Dix in New Jersey, Petitioner was reported for his involvement in a physical altercation with another inmate. See (Docket No. 10, "Attachment #2", "Incident Report No. 1096905"). According to the incident report, Petitioner stated that while on the phone, another inmate came in "talking trash" and wanting to fight with him. Petitioner stated that he hit the other inmate in self defense. (Id.).

The next day, April 3, 2003, Petitioner was again reported for his involvement in another physical altercation, this time with a different inmate. (Id. "Incident Report No. 1096907"). Both inmates used weapons and the fight resulted in Petitioner receiving injuries that required him to be treated at a local hospital.

Copies of the incident reports were delivered to Petitioner on April 22, 2003. Before the incident reports were investigated by the Bureau of Prisons ("BOP"), the incidents were referred to the FBI for possible criminal prosecution. The BOP disciplinary process was stayed pending the outcome of the FBI referral.

Twelve months later, on April 22, 2004, the FBI informed the BOP that they would not prosecute the matter and released the incident reports to the BOP for further processing. See (Docket No. 10, "Attachment #3" at page 18 ). Thereafter, a hearing was held for each incident and the DHO found Petitioner responsible for committing the act of "Fighting with Another Person," in violation of disciplinary Code 201, for each incident. Petitioner was sanctioned with thirty (30) days disciplinary segregation, disallowance of

---

[2]The underlying facts of Petitioner's criminal conviction are not relevant to this discussion since Petitioner does not contest his criminal conviction or sentence, but rather the determination of a DHO.

twenty-seven (27) days good conduct time, and forfeiture of fifty-four (54) days of non-vested good conduct time for each of the incidents.

### B. Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on October 26, 2005, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Docket No. 1). Thereafter, Petitioner filed an Amended Petition pursuant to an order from the Honorable Lawrence E. Kahn, United States District Judge. (Dockets No. 4 & 5). In his Petition, Petitioner asserts two claims for habeas relief: (1) that his Fifth Amendment right against double jeopardy was violated; and (2) that his due process rights were violated because of the one year delay between the date of the incident reports and the DHO hearing. For the reasons that follow, the Petition should be DENIED.

### III. DISCUSSION

### A.   Federal Habeas Corpus Standard

To obtain a federal writ of habeas corpus, a prisoner must show that he is in custody in violation of the Constitution or laws of the United States. Habeas corpus is appropriate only for challenges to the "fact or duration" of confinement. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Peralta v. Vasquez, 467 F.3d 98, 102 (2d Cir.2006); see also, Jenkins v. Haubert, 179 F.3d 19, 22 (2d Cir.1999) (discussing habeas relief for prisoners under Preiser.).

"Prison disciplinary proceedings are not part of a criminal prosecution, [and thus] the full panoply of rights due a defendant in such proceedings does not apply." Wolff v.

McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). While prison officials are given substantial deference in the execution of policies, see Jolly v. Coughlin, 76 F.3d 468, 476 (2d Cir.1996), a disciplinary hearing, in order to comport with due process, must provide the inmate: (1) 24 hour advance notice of the charges; (2) the opportunity to appear at the hearing, call witnesses and present rebuttal evidence; and (3) a written statement as to the evidence relied on and reasons for their decision. See Wolff, at 563-72. These requirements are also set out in 28 C.F.R. § 541.17, which governs the procedures at federal prison disciplinary hearings.

### B.  Petitioner's Claims

As set forth above, Petitioner asserts the BOP violated his constitutional rights in their handling of incident reports filed against him. (Docket No. 5). Respondent asserts that Petitioner has failed to exhaust his administrative remedies with respect to his double jeopardy claim, and therefore, that claim should be dismissed. Respondent also asserts that both Petitioner's due process and double jeopardy claims are meritless.

### 1.  Double Jeopardy

The record indicates that Petitioner was confined to the Special Housing Unit ("SHU") for eight (8) months while the FBI investigated the incidents. He was released after the FBI informed the BOP that it would not pursue any criminal charges. Following the BOP hearing, Petitioner was penalized in the form of thirty (30) days disciplinary segregation, disallowance of twenty-seven (27) days good conduct time, and forfeiture of fifty-four (54) days of non-vested good conduct time for each of the incidents. Petitioner argues that he

was punished twice for the same conduct – first by virtue of the SHU confinement and second due to the penalties imposed by the DHO.

This claim fails as a matter of law. Prison disciplinary hearings are not considered part of a criminal prosecution, Wolff v. McDonnell 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974), and such hearings do not implicate the Double Jeopardy Clause of the Fifth Amendment. See Breed v. Jones, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) (holding that application of the double jeopardy clause is limited to proceedings which are "essentially criminal"); Porter v. Selsky, 287 F. Supp.2d 180, 190 (W.D.N.Y. 2003) (collecting cases and noting that "several lower federal courts within the [Second] circuit, as well as the New York Court of Appeals, have . . . routinely rejected state prisoners' double jeopardy challenges to disciplinary sanctions imposed under DOCS' administrative scheme, adhering to the traditional rule that prison disciplinary sanctions do not trigger the protections of the double jeopardy clause"); Lisbon v. Goord, No. 02 Civ. 35672003 WL 1990291, at *2 (S.D.N.Y. Apr. 29, 2003)("[T]he double jeopardy clause is limited to criminal proceedings and [thus it] 'does not pertain to prison disciplinary hearings."); see also Lucero v. Gunter, 17 F.3d 1347, 1351 (10th Cir.1994); Branch v. Jordan, 457 F.Supp.2d 895, 896 (N.D.Ind. 2006); Shabazz v. Marberry, No. 2:06-cv-10922, 2006 WL 1555987, at *5 (E.D.Mich. June 5, 2006); Dodd v. Smith, No. 3:CV 05 1802, 2005 WL 2234642, at *3 (M.D.Pa. Sep. 14, 2005).

Accordingly, this Court finds that even if Petitioner did exhaust his administrative remedies, he is not entitled to relief on this basis, and his claim should be DISMISSED.

### 2. Due Process

In his second claim, Petitioner asserts that his due process rights were violated by

the BOP, when it referred his case to the FBI before closing it administratively, resulting in a one year delay in the BOP's processing the incident reports against Petitioner while the FBI was investigating the matter.

The Fourteenth Amendment's Due Process Clause protections only apply to determinations affecting the duration of confinement because an inmate's liberty interest is at risk. Wolff v. McDonnell, 418 U .S. 539 (1974). However, these protections do not apply to mere changes in the conditions of confinement. Id. at 557.  A disciplinary conviction that results in the loss of good-time credits is equivalent to a loss of a "shortened prison sentence." Wolff, 418 U.S. at 556-57.  Therefore, habeas corpus is the appropriate vehicle through which to challenge a disciplinary proceeding that results in the loss of good- time credits. See Preiser, 411 U.S. at 500 (holding that habeas corpus is the "sole remedy for a prisoner's challenge to revocation of good-time credits").

In this case, Petitioner did lose good time credits as a result of the determinations made by the DHO in each of the hearings for the two incident reports filed against him.  As such, Wolff's protections apply to Petitioner's claim.  As set forth above, a disciplinary hearing, in order to comport with due process, must provide the inmate: (1) 24 hour advance notice of the charges; (2) the opportunity to appear at the hearing, call witnesses and present rebuttal evidence; and (3) a written statement as to the evidence relied on and reasons for their decision. See Wolff, at 563-72.

Petitioner does not allege that he failed to receive adequate notice of the hearing or that he was denied an opportunity to appear, call witnesses or present rebuttal evidence. In addition, there is no dispute that Petitioner received a written statement of the evidence relied upon and reasons for the DHO's decision.

Rather, Petitioner argues that his due process rights were violated because the BOP failed to conduct a timely hearing. In support of this argument, Petitioner cites, *inter alia*, the procedural rules for prison disciplinary hearings contained in the Code of Federal Regulations, 28 C.F.R. § 541, et. seq.

However, the deadlines set forth in the applicable regulations are not mandatory and refer to the time period in which proceedings should "ordinarily" take place. See, e.g., 28 C.F.R. §541.15 (a) ("Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident."); 28 C.F.R. §541.15 (b) ("Each inmate so charged is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident.").

Moreover, the regulations specifically require that the BOP investigation be suspended where, as here, "it appears likely that the incident may be the subject of criminal prosecution." 28 C.F.R. § 541.14 (b)(1). In such cases, the regulation provides that "the investigating officer shall suspend the investigation, and staff may not question the inmate until the Federal Bureau of Investigation or other investigative agency interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur." Id.

As such, the suspension of the investigation by the BOP in this case pending the completion of the FBI's review was entirely consistent with the applicable regulations and Petitioner has not established any colorable due process claim based upon that delay. Further, Petitioner has not articulated any prejudice allegedly suffered as a result of the delay. Accordingly, this Court finds that Petitioner is not entitled to relief on this basis and

his claim should be DISMISSED. See Williams v. Menifee, No 05 Civ 4045, 2006 WL 2481823, at *4-*5 (S.D.N.Y. Aug. 25, 2006); see also United States v. Delgado, No. 97 Cr 0007, 1997 WL 811540, at *1 n.2 (S.D.N.Y. Apr. 8, 1997) ("Although hearings or review by prison staff are usually required either before or shortly after an inmate is placed in administrative detention, an investigation is suspended when it appears likely than an incident may be the subject of criminal prosecution. A prison staff investigation does not resume until the agency responsible for the criminal investigation advises that further staff investigation may occur."); Crum v. Dodrill, 562 F. Supp.2d 366, 381 (N.D.N.Y. 2008) ("Furthermore, even if Defendants had not so complied with that regulatorily imposed deadline, no constitutional due process violation would have occurred. This is especially true where (as here) there has been no factual allegation plausibly suggesting that any prejudice resulted from the delay."); Mayo v. Hogsten, No. 3:CV-06-2241, 2007 WL 1521232, at *5 (M.D.Pa. May 23, 2007) ("The Constitution only requires compliance with minimal federal due process standards protected by the Due Process Clause of the Fourteenth Amendment. Wolff does not set a three-or seven-day limit, or any time limit, for the hearing.").

## IV. CONCLUSION

For the reasons stated above, the Court recommends that Enrique Scott's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 be denied and that the Petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

                 Respectfully submitted,

DATED:     October 14, 2008

              Syracuse, New York

/s/ Victor E. Bianchini
Victor E. Bianchini
United States Magistrate Judge

### V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir.

1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

October 14, 2008

*(signature)*

Victor E. Bianchini
United States Magistrate Judge